

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARVIN OSORIO,
        Petitioner,

-against-

JOSEPH T. SMITH,
        Respondent.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
10-CV-1806 (TCP)

PLATT, District Judge.

Before the Court is Marvin Osorio's ("Petitioner") Petition for a Writ of Habeas Corpus ("Petition"), pursuant to 28 U.S.C. § 2254. ECF No. 1. The Petition challenges Petitioner's conviction, following a jury trial in New York State Supreme Court (Nassau County), and the subsequently imposed sentence. Pet'r's Pet. 1. The Court **DENIES** the Petition.

## BACKGROUND

**A.**   **Facts**

On August 26, 2001, Petitioner and Olbin Reyes, associates in the "MS-13" street gang, drove around Westbury and surrounding locales searching for members of a rival street gang, the "Bloods". *See* Resp't's Aff. ¶ 5. Before they began their drive, Petitioner witnessed a third person hand Reyes a revolver. *Id.* While driving, Petitioner and Reyes saw Jennifer Grimes, Deneshia Stanley, and Wisbin Leger walking on a street in New Cassel. Because he was wearing the color red, Petitioner and Reyes thought Leger was a member of the Bloods gang. *Id.* Reyes aimed the revolver at Leger, but another car passenger told him to stop. *Id.*

After driving past the trio, Petitioner stopped the car to wait for the trio to walk past the car; after they walked past, Petitioner drove alongside them with his car's headlights off. *Id.* at ¶

1

6. Reyes again the revolver, but this time fired two shots, both of which hit Grimes, who died from the wounds. *Id.*

After Petitioner was arrested, officers brought him to the Homicide Squad in Mineola, Long Island. Nassau County Police Detective Warren Zimmerman—the investigating detective for the Grimes murder—showed Petitioner a "Miranda 'rights card' [and Zimmerman] handed it to [P]etitioner, [Zimmerman] explained that it was the same thing [Zimmerman] had already [orally] told [P]etitioner, and offered [P]etitioner a chance to read it." Pet.'s Mem. Supp. 7 (citing Hearing Trans. 42). Petitioner admits he voluntarily signed the *Miranda* advisement card as did Detective Zimmerman. *See, e.g., id.* at 8-9.

Petitioner states Zimmerman left the interrogation room at 10:30 p.m. to interrogate other persons related to the Grimes murder; Zimmerman reentered Petitioner's interrogation room at 12:28 p.m. *Id.* at 8. After approximately 30 minutes of interrogation, Petitioner orally admitted to the facts stated *supra* 1-2. *Id.* at 10. After this admission, and a break, Zimmerman asked Petitioner to repeat the events, so Zimmerman could prepare a written statement. *Id.* at 11. Petitioner complied and, after Zimmerman finished writing, Petitioner affirmed the truth of the statement and signed the statement. *Id.* at 11. The following morning, Petitioner recorded a video interview wherein he again orally admitted the facts. *Id.* at 12. That morning, Petitioner also signed an express waiver of his speedy arraignment rights. *Id.* at 12.

That same morning—after Reyes was questioned and "indicated [Petitioner] knew there was a gun when they left the party"—Zimmerman reentered Petitioner's interrogation room (*id.* at 12) and asked Petitioner "[d]o you still wish to speak to me without a lawyer?" to which Petitioner responded affirmatively. *Id.* at 13. Petitioner admitted he saw a third person give Reyes the black revolver, which was used to shoot and kill Grimes. *Id.* at 13. Petitioner prepared

2

an addendum to his first written statement in which he stated (i) he knew he still retained *Miranda* rights, (ii) he was making a statement voluntarily, and (iii) he knew Reyes received the murder weapon at the party. *See* Addendum, Pet.'s App. at A13.

For his role, prosecutors indicted Petitioner on two counts of murder in the second degree ((a) intent to cause death and (b) depraved indifference to human life), criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree. *See* Indictment, Pet'r's App. A1. A jury convicted Petitioner on charges of depraved indifference murder; the trial judge sentenced Petitioner to twenty-five years-to-life. Resp't's Aff. ¶ 8.

> [Petitioner] appealed his conviction, claiming that various alleged errors required a new trial. The judgment was affirmed. After his unsuccessful appeal, [Petitioner] filed a writ of *coram nobis* in the Appellate Division, claiming that his appellate counsel (who had been his trial counsel) was ineffective. The Appellate Division held that [Petitioner] "failed to establish that he was denied the effective assistance of appellate counsel. Having exhausted that process, [Petitioner] returned to the trial court, filing his current motion to vacate judgment on the grounds that his trial counsel was ineffective in advising him to forgo a guilty-plea bargain which, after a jury verdict of guilty and appellate affirmation of the judgment, he finally believes he should have accepted.

Order Denying Mot. To Vacate, Donnino, J., Aug. 16, 2010, Pet'r's App. A285-300 ("the Order"). The trial court denied Petitioner's motion vacate the judgment. *Id.*

### B. Claims

The Petition presents three claims: (i) Petitioner was denied his Sixth Amendment right to effective assistance of counsel as to plea negotiations; (ii) Petitioner was denied his Fifth and Fourteenth Amendment rights against self-incrimination as to statements taken during police interrogations; and (iii) Petitioner was denied his due process rights as to his conviction wherein the People failed to prove each of the elements of depraved indifference murder beyond a reasonable doubt. *See* Mem. Supp. Pet. 1-2; *see also* Amended Pet. 6-9.

3

## DISCUSSION

A. **Legal Standard for a Petition for a Writ of Habeas Corpus**

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 131 S. Ct. 770, 780 (2011).

A state prisoner seeking federal habeas review of his state conviction is required to first exhaust all remedies available to him in the State courts. *See* 28 U.S.C. § 2254(b)(1)(a). Exhaustion requires alerting the State courts to the Federal nature of the claim and raising the claim in the State's highest court. *See, e.g., O'Sullivan v. Boerckel*, 526 U.S. 838, 839-40 (1999).

> If an application [for a Writ of Habeas Corpus] includes a claim that has been "adjudicated on the merits in State court proceedings," § 2254(d), an additional restriction applies. Under § 2254(d), that application "shall not be granted with respect to [such a] claim ... unless the adjudication of the claim": "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." "This is [] 'difficult to meet,' *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011), and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

*Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011); *see also Jones v. Keane*, 329 F.3d 290, 294 (2d Cir. 2003) (federal court is barred from granting a habeas petition if the petitioner has not exhausted all available state remedies. "Exhaustion requires a petitioner fairly to present the federal claim in state court." Presentation means a petitioner "has informed the State court of both the factual and the legal premises of the claim he asserts in Federal court.").

4

In habeas corpus petition review, the Court presumes "the state court's factual findings are correct unless they are rebutted by clear and convincing evidence." *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (citing 28 U.S.C. § 2254(e)(1)).

The Court holds Petitioner's claims have been properly exhausted in State court.

### B. Ineffective Assistance of Counsel

#### i. Legal Standard

"[T]he proper standard for attorney performance is that of reasonably effective assistance[;] . . . the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688.

"Representation of a criminal defendant entails certain basic duties. Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest . . . . Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." *Id.*

"A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal citations omitted).

As to habeas review,

> [t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from

5

an *incorrect* application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington v. Richter*, 131 S. Ct. 770, 785-86 (2010) (internal citations and quotations omitted; italics in original).

### ii.     Analysis

For emphasis, this Court's job, under *Harrington*, is not to decide whether Petitioner's counsel met the *Strickland* standard; rather, it is to determine whether the State court's *Strickland* holding was reasonable. 131 S. Ct. at 785.

As noted *supra*, after Petitioner's conviction and sentence, Petitioner appealed—through his trial and appellate counsel, Richard Gumo—on various grounds. These grounds for appeal did not include ineffective counsel as to Petitioner's plea negotiations. *See, e.g.*, Pet's App. Brief, A54-104. When his conviction was affirmed by the Appellate Division in March 2008, Petitioner filed an Application for Writ of Coram Nobis. *See, e.g.*, A213-234. The Appellate Division denied this application in December 2008. Next, Petitioner filed a Motion to Vacate Judgment with the trial court, on the same ground of ineffective assistance of counsel.

The Appellate Division held that "[Petitioner] has failed to establish that he was denied the effective assistance of appellate counsel." *People v. Osorio*, 869 N.Y.S. 794 (N.Y. App. Div. 2008). To support its holding, the court cited *Jones v. Barnes*, 463 U.S. 745 (1983). The United States Supreme Court, in *Jones*, held that "[no] decision of this Court suggests, however, that [an] indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment,

6

decides not to present those points." *Jones*, 463 U.S. at 751.[1] "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the very goal of vigorous and effective advocacy . . . . Nothing in the Constitution or our interpretation of that document requires such a standard." *Id.* at 753. In accordance with *Harrington*, this Court holds the Appellate Division's determination on this issue was reasonable.

In the trial court's denial of Petitioner's Motion to Vacate Judgment, the court held that "defense counsel's advice to [Petitioner] to reject the plea offer – based on [Petitioner's] own claims and on counsel's reasonable and well-informed expectations about what evidence would be introduced at trial – 'was within the range of competence demanded of attorneys in criminal cases.' " The Order 15 (citing *In re Alvernaz*, 830 P.2d 747, 755 (Cal. 1992)). The Supreme Court, in *Strickland*, held "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." 466 U.S. at 689.

In the Order, the trial court noted, additionally, the holding in *Purdy v. United States*, which held "counsel must communicate to the defendant the terms of the plea offer . . . and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." The Order 11 (citing 208 F.3d 41, 45 (2d Cir. 2000) (internal quotations and citations omitted)). The Order detailed

---

[1] The court held, further, that "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id.* at 751-52.

counsel's advice; the court held this advice met the *Strickland* standard. In accordance with *Harrington*, this Court holds the Order was reasonable. The Court denies Petitioner's first claim.

## C. Self-Incrimination Rights

### i. Standard

"[A]n individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation." *Miranda v. Arizona*, 384 U.S. 436, 471. "[T]his warning is an absolute prerequisite to interrogation. No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead." *Id.* at 471-72.

"A statement made by the accused 'during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused in fact knowingly and voluntarily waived *Miranda* rights when making the statement.' " *United States v. Taylor*, 736 F.3d 661, 668 (2d Cir. 2013) (quoting *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010)).

The Court "look[s] at the totality of circumstances surrounding a *Miranda* waiver and any subsequent statements to determine knowledge and voluntariness." *Id.* (citing *Oregon v. Elstad*, 470 U.S. 298, 309 (1985)). "In that context, 'knowing' means with full awareness of the nature of the right being abandoned and the consequences of abandoning it, and 'voluntary' means by deliberate choice free from intimidation, coercion, or deception." *Id.* (citing *United States v. Plugh*, 648 F.3d 118, 127 (2d Cir. 2011)). "The government bears the burden of proof." *Id.* (citing *Colorado v. Connelly*, 479 U.S. 157, 168–69 (1986)).

"In general, a suspect who reads, acknowledges, and signs an "advice of rights" form before making a statement has knowingly and voluntarily waived *Miranda* rights." *Id.* (citing *United States v. Plugh*, 648 F.3d 118, 127–28 (2d Cir. 2011)).

8

> "To the extent that federal habeas courts have even considered the constitutionality of delaying arraignment of state defendants, they have only done so as part of a Fifth Amendment based analysis of the voluntariness of confessions. Thus, delay in arraigning a state defendant is not, in itself, a constitutional violation, but is at most a factor to be weighed in determining whether or not, viewed in the totality of the circumstances, an incriminating statement was the product of police coercion.

*Holmes v. Scully*, 706 F. Supp. 195, 202 (E.D.N.Y. 1989) (citing *United States ex rel. Wade v. Jackson*, 256 F.2d 7, 11–12 (2d Cir. 1958)).

### ii.    Analysis

After Petitioner moved to suppress his oral and written statements and a hearing was provided to determine the issue, the State court held "all oral, written, and videotaped statements by [Petitioner] were made after [he was] Mirandarized on multiple occasions and after [he] knowingly, intelligently, and voluntarily waived those rights." Order, Calabrese, J., August 18, 2003, Pet's App. A53. "[Petitioner's] claim that his second written statement must be suppressed because he was not speedily arraigned is denied. Any delay in arraignment did not affect the voluntariness of the statement in question." *Id.*

The Appellate Division held that "[t]he evidence demonstrates that [Petitioner] knowingly waived his Miranda rights on several occasions during his interrogation and there is no evidence that his second written statement was obtained through threats or coercion." *Osorio*, 855 N.Y.S.2d at 165 (internal citations omitted). The Appellate Division held, additionally, "a delay in arraignment does not cause the right to counsel to attach automatically." *Id.*

After reviewing the facts, including Petitioner's own Statement of Facts, this Court holds the pre-trial suppression order and the Appellate Division holding were not unreasonable applications of Federal law; nor were the decisions based on unreasonable determinations of the

9

facts. *See Cullen*, 131 S. Ct. at 1398. Petitioner fails to present clear and convincing evidence that the State courts' factual findings are incorrect. *See* 28 U.S.C. § 2254(e)(1).

Moreover, as to any delay in arraignment, Petitioner voluntarily signed an express waiver of his speedy arraignment rights. The Court finds the State courts did not unreasonably apply Federal law as to the voluntariness of Petitioner's right to a speedy arraignment. The Court denies Petitioner's second claim.

### D. Sufficiency of Evidence

#### i. Standard

"A person is guilty of murder in the second degree when . . . (2) under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." N.Y. Penal Law § 125.25(2).

The Court "review[s] the decision of the state court under the federal sufficiency standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979)." *Gutierrez v. Smith*, 702 F.3d 103, 113 (2d Cir. 2012) (citing *Epps v. Poole*, 687 F.3d 46, 50 (2d Cir. 2012)). "The relevant question under *Jackson* is whether, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (citing *Jackson*, 443 U.S. at 319). "When considering the sufficiency of the evidence of such a state conviction, a federal court 'must consider the evidence in the light most favorable to the prosecution and make all inferences in its favor,' and, in doing this, 'must look to state law to determine the elements of the crime.'" *Id.* (citing *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000)).

"A person is guilty of depraved indifference murder when, 'under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person.' " *Id.* (citing N.Y. Penal Law § 125.25(2)).

"To constitute depraved indifference, the defendant's conduct must be 'so wanton, so deficient in a moral sense of concern, so devoid of regard of the life or lives of others, and so blameworthy as to warrant the same criminal liability as that which the law imposes upon a person who intentionally causes the death of another.' " *People v. Suarez*, 844 N.E.2d 721, 728 (N.Y. 2005) (citing *People v. Russell*, 693 N.E.2d 193 (N.Y. 1998)).

> A defendant can intend to cause the death of one person while simultaneously engaging in conduct that recklessly creates a grave risk of death to another. The continued viability of this principle was inferentially reaffirmed in *People v Suarez*, where the Court noted that "the mere presence of third persons at the scene of a killing does not convert an intentional homicide directed at a particular victim into depraved indifference murder unless others are *actually endangered*".

*People v. Craft*, 827 N.Y.S.2d 376, 378 (N.Y. App. Div. 2007) (internal citations omitted).

### ii. Analysis

Respondent's memorandum best re-states the applicable facts: "Petitioner admitted that . . . on the night of the shooting, [Petitioner and Reyes] decided to drive around looking for members of the Bloods, a rival [] street gang, in order to retaliate for an alleged act of violence perpetrated by the Bloods . . . ." Resp't's Mem. 56 (citing Trial Tr. 938-39, 1009-10, 1047-57, 1171-72, 1187). "Before leaving the party, Petitioner saw someone hand Reyes a revolver wrapped in a blue bandana." *Id.* Reyes and Petitioner saw Leger wearing colors associated with the rival gang; Reyes and Petitioner believed Leger was associated with the rival gang. "After they saw Leger, Grimes, and Stanley, Petitioner and Reyes put blue bandanas over their face. . . .

11

Reyes took out the [] revolver . . . and started to aim it toward the three people through the open window of the moving car." *Id.* at 57. "Petitioner stopped the car, turned off the headlights, and waited for the three people to walk by. When they did walk by, Petitioner [] follow[ed] them with the car. Petitioner's face was still covered [] and he kept the [car's] headlights off." *Id.* "[Petitioner] slowly drove up alongside Grimes, Stanley, and Leger. Reyes once again reached out of the open car window with the revolver in his hand and fired two shots into the group of people." *Id.*

The fact-finder reasonably held Petitioner "recklessly engage[d] in conduct which create[d] a grave risk of death to another person." N.Y. Penal Law § 125.25(2). After viewing the evidence, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Gutierrez v. Smith*, 702 F.3d at 113. Petitioner admitted he knew Reyes had the revolver; Petitioner saw Reyes aim the gun at the three (which Reyes pulled back into the car, at first); Petitioner waited for the three to pass the car, then slowly drove alongside them; Petitioner saw Reyes aim the revolver once again.

Petitioner argues the New York Court of Appeals, in *People v. Hafeez*, set precedent that rejected a depraved indifference conviction under similar circumstances. Pet'r's Mem. 104 (citing 792 N.E.2d 1060 (N.Y. 2003)). Petitioner notes the Court of Appeals "rejected the depraved indifference conviction in what it termed a 'quintessentially intentional attack directed solely at the victim.' " *Id.* (citing *Hafeez*, 792 N.E.2d. at 1063). This case is clearly distinguishable from *Hafeez*: Reyes aimed for Leger because Leger wore red, the rival gang's color. The intended target was not Grimes. In the present case, after reviewing the facts stated *supra*, the fact-finder reasonably concluded that Petitioner's actions were "imminently dangerous and presented a very high risk of death to others." *Hafeez*, 792 N.E.2d at 1063.

Moreover, the court in *Hafeez* distinguished that case from another State case, *People v. Sanchez*, 777 N.E.2d 204 (2002). The *Hafeez* court held the depraved indifference "burden was met in *Sanchez*, which involved the sudden shooting of a victim by a defendant who reached around from behind a door and fired into an area where children were playing, *presenting a heightened risk of unintended injury.*" *Id.* (emphasis added). The "heightened risk of unintended injury" was clearly present in this case. The fact-finder's conviction on this charge was entirely reasonable. The Court denies Petitioner's third claim.

E.  **Appealability**

The Court shall not issue a certificate of appealability in this case as Petitioner has failed to make a "substantial showing of the denial of a constitutional right". 28 U.S.C. § 2253(c)(2); *see also, e.g., Miller–El v. Cockrell,* 537 U.S. 322, 336 (2003).

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Petitioner's Petition for a Writ of Habeas Corpus. The Court orders the Clerk of the Court to serve a copy of this Order upon the parties to this action.

**SO ORDERED.**

Dated: January 15, 2014
        Central Islip, New York

/s/ Thomas C. Platt
_____
Thomas C. Platt, U.S.D.J.